is here for the appellant Seabrooks. Jonathan Colon is here for the government. Ms. Bryn, you may begin. Thank you. May it please the court, Brenda Bryn with the Federal Defender's Seabrooks. The parties in this case agree on three crucial points. Rehafe is a new substantive rule of statutory law which is retroactively applicable in a first 2255 case under Teague. Second, the district court confused the retroactivity standard for a first 25 with that of a successor under 2255 H2. And finally, the fact that Rehafe is not a constitutional rule was irrelevant to the retroactivity analysis. So the question on which the COA was granted should be answered in the affirmative. Rehafe indeed applied retroactively in this first 2255 case and that would otherwise apply here. Even while agreeing that that is the correct answer to the question asked in the COA, the government has raised on appeal for the first time two new defenses in an effort to have this court affirm on different grounds. Those defenses are procedural default and harmless error. Both of them were waived below and both are meritless. I've addressed waiver extensively in my reply brief and in response to the 28J letters the government has recently filed. So let me just say here that if the court agrees that both of these new defenses were waived below . . . He didn't know a butler's felon status, right? Yes. He didn't say anything about his own felon status on direct appeal. I did not and we have never argued that because in fact the defense in this case was that he couldn't be near guns because he was a felon and so he kept saying, I have to get them away from me. So that has never been a challenge. But our argument on appeal and in this 2255 that an aiding and abetting instruction requires that the aider and abetter know of the felon's status to aid and abet a 922G offense, that argument that was raised on appeal and raised in this 2255 has been confirmed by Raheith. So now the argument is not simply that the instruction that was given was factually insufficient, it's that it was legally insufficient. That type of knowledge was required. In the event that the court disagrees that the government waived procedural default and harmless error, I'd like to devote my time this morning to addressing harmless error in depth in order to explain why the government has not and cannot meet its burden of proving harmlessness. Under Brecht v. Abramson, which is the harmless error that this court recently adopted in Granda for a legally insufficient instruction, which is what we have here, the magistrate and the district court judge got this wrong. They tried to hold Mr. Seabrooks to an actual innocence or factual innocence standard. And that's not the standard that's applicable under Brecht. And contrary to the government, the standard is also not a sufficiency standard. It doesn't matter if there was evidence, as I said, to support Seabrooks' knowledge that he was a felon. If there is a legally insufficient instruction, which is the aiding and abetting instruction, without clarification from the court that the aider and abetter needed to know of the principal's felon status. Now, so sufficiency isn't required or sufficient for the government to meet its harmlessness burden. But what does the government need to prove? Brecht and Granda and Adly, the new unpublished decision that the government just filed, all say the same thing. The government's burden is to prove . . . Well, you're relying on Griffin and Griffin is unpublished, too. Griffin recognized that government offenses can be waived in Section 2255 proceedings, but that's not binding on us, is it? No unpublished decision is binding on the court, Your Honor. But I think that's a well-settled principle of law that comes from the Supreme Court, from Wood v. Milliard, Day v. McDonough. That's well-settled that the government waives its affirmative defenses by not advancing them in a timely fashion before the district court. So not only on at least . . . the government never made this new procedural default argument, which is really baseless. But as to harmless error, in response to the order to show cause, the government never argued harmless error. The government argued there were two legally sufficient theories. And once one of those theories became legally insufficient, it did not revise its position. And I gave them two opportunities to do so because I filed a pleading notice of supplemental authority, rehafe, and characterized it as a case-dispositive decision that required reversal of count one. No response from the government for 10 months. The magistrate then issued the report and recommendation. I filed extensive objections. I went all through the Brex standard and explained why this error was not harmless. No response from the government. And under those circumstances, the government waived harmless error for the record. They have also tried to change their harmless error argument from the answer brief to the 28-J letter. In the answer brief, they were arguing factual insufficiency. And in my reply, I explained that we don't only have factual, but legal insufficiency as well. So they have tried to address that in a 28-J, which is improper. Let me just get to the record here because Brecht and Granda require a full record review to determine whether the error had a substantial and injurious effect on the verdict. And what we have to look at there is the actual impact of the error on the actual jury's thinking on their deliberative process. And there are three groups of evidence here that show that the error in this case was not and cannot be harmless. Of course, the government has never addressed any of those groups of evidence. The first are the government's initial closing and rebuttal closing argument. By the time of closing, the government's original theory of actual possession had combusted. It was impeached. The government witnesses were heavily impeached by defense counsel. And then a defense witness clarified for them that the main exhibit they were relying on, this one pouch with a gun that they claimed Isaac Seabrooks was sitting on and therefore actually possessed, that that had been staged after the fact. Not one government witness could say who took it out of the vehicle or who put it back in or when. But the crime scene photographer said it wasn't there when she arrived at the scene and then it was put back in for her to photograph it. So in closing, you see the government's theory, one theory, turning into two. They requested an aiding and abetting really strongly, both in initial closing, but particularly in rebuttal after the defense counsel pointed out how the government's case had fallen apart on actual possession. And you hear, and I just want to read this, this is at page 629 of the government's rebuttal argument. The prosecutor in the last argument that the jury hears before deliberating says, and I want to be very clear when you go back to the jury room about the value of that aiding and abetting instruction. So they're really pushing aiding and abetting, particularly in rebuttal closing. Now the second, oh, I see that my time is closing. Let me just say that the additional evidence that supports the fact that the error in this case was harmful, not harmless, is number one, the jury's question. They understood everything that defense counsel argued, that touching receipt, mere inspection of a gun, is not possession. So I see that my time is up and let me just ask the court, after a full review of the record, to reverse. Thank you, Ms. Brin. We'll hear from Mr. Colan on behalf of the government. Thank you, Your Honor. May it please the court, Jonathan Colan on behalf of the United States. If I could ask the court's indulgence for just a moment. I want to clear up what is, which is, I'm sure is equally my confusion as my colleagues, but it really feels in this case, in the briefs and the letters, we've been arguing past each other. And I'd like to try, if I can, to clarify what I think is at stake in this case and where it ultimately depends. Mr. Seabrooks has the burden to establish prejudice from his claim of Rahif error in his aiding and embedding, in the inclusion of the aiding and embedding instructions. To do that, however, Your Honor, he first has to show, and there's two levels of prejudice and that's where we get some confusion here. But the first level of prejudice he has to show under the Brecht standard, as this court has interpreted in Granda and other cases, is that there was more than a reasonable possibility that the jury relied exclusively on the aiding and embedding count. And the reason for that is, if there was any additional reliance on the primary possession count, then there would be no prejudice. That would be harmless. Because even though the government concedes that there was prejudicial Rahif error as to the aiding and embedding count, the evidence is overwhelming in this case, far beyond the legion of cases of this court and the Supreme Court recently in Greer have recognized, which show a harmlessness as to his primary possession theory. I kind of disagree with you on that. I mean, maybe you can explain what I'm missing. It seems to me like the evidence on the principal liability, which is what we're talking about now, is he was in the truck at the time that the vehicle was broken into and he was handed three firearms and they drove off and then they came back and that's when they get stopped. His story is that he was bringing the, that he wanted to get rid of the guns, he was bringing them back. The jury could certainly choose to disbelieve that, but that is what his story is and there's nothing to contradict that. And that's basically it. I mean, that is the entirety of the evidence. We also have the jury's question about whether mere receipt and touching is enough. And then we have the argument in closing and particularly in rebuttal where the prosecutor says, and by the way, of course, it's not that this is a problem, that it's not specifically charged in the indictment as aiding and abetting, but usually we'll see, you know, also in violation of section two, right? In violation of whatever the primary section is in section two. That's not here. I'm not saying that's a problem, but the fact of the matter is that it makes it all the more conspicuous when an aiding and abetting instruction is later requested. So we have all of that. So what am I missing here? What is the overwhelming evidence that he had principal liability? Okay. Your Honor, you brought up three different points. There was the evidence, there was the argument, and then there was the instructions and jury questions. I want to go through each one because I think they're each important. First is to the evidence, and I think this is another point where counsel and I are kind of talking past each other. The primary evidence that would establish Mr. Seabrook's possession, actual possession of the firearms, was his own statements. It didn't rely on the photographs. It was his own, and there was no dispute as to his statements. Well, there was a dispute as to his statements. He said that he had, he told the detective or the police officer that he had touched the bag and he opened it up to see what was in it, but he didn't touch any of the firearms. And the officer said that he told him that he touched the little gun and they would find his fingerprints on the little gun. Of course, his fingerprints weren't found on any of the guns. So it seems like there was a dispute there. Well, Your Honor, I mean, I believe what his statements were is that he accepted the guns from Mr. Butler, opened the bag, looked at at least one of them, looked at the one that was in the bag, and then placed them, one in the console and one around the seat. I mean, that's what his statements were, I believe, that he took them, he had control of them, and he placed them. So that is, the court's instruction on actual possession is direct physical control. That's direct physical control. But we also have the Edwards issue of mere recede and, you know, that was basically what the defense was arguing here. I mean, the question here is, is it overwhelming evidence? You just, you build it as overwhelming evidence. And maybe it was, and I'm missing something, so I'm trying to figure out what evidence you're relying on other than what I've just said. Like I said, there's various points. The dispute about, for example, his intent. It was a dispute as to intent. And you said, oh, sorry, that perhaps the jury disbelieved it. And I think we can know that they did for this reason. The intent of, I didn't want guns, I didn't know he was having guns, well, first we have the evidence that the window was open. So he could see that Mr. Butler was breaking in and what he was doing. But the jury, we know, rejected his statements about intent because they found him guilty of, A, possession of the other count, which is not in dispute here, and B, even counsel's argument depends on him being found guilty of aiding and abetting. And aiding and abetting requires, as instructed by the court, that he willingly joined in the effort of what was going on. Right, so, I'm sorry. The problem is, I don't think we can rely on aiding and abetting. And the reason we can't rely on aiding and abetting is because I think after Rehafe it's clear that the government had to prove that he knew that his co-defendant was a felon. And he may well have known that, but I think we all agree that there's no evidence in the record of that. Absolutely, and I'm not relying. So the question is whether there was overwhelming evidence that he was guilty of principal liability. And I'm not sure that it actually had to be overwhelming, but that's what you have set the bar as just now. So that's what I'm trying to understand. I understand that there was I'm asking you how it rose to the level of being overwhelming, as you've described, because it seems to me like, you know, I'm kind of left with some significant doubts about whether the jury found him guilty on principal liability or aiding and abetting liability. And again, I want to make sure I'm clear that there's two different levels here. And this has been part of our problem in this case, is I think both counsel and I have both been So I want to be clear here. The overwhelming evidence here is that assuming possession for the moment, just the moment if we assume that possession is established, that as to his primary possession, there is overwhelming evidence that we meet the harmless error standard for Rahif to satisfy Rahif to show that Mr. Seabrooks was aware that he was a felon at that time. Okay, I'm not debating that. I understand that, but you're asking me for my characterization of overwhelming. And I agree, Your Honor, absolutely, that there is an arguable question about whether the jury found his primary possession. So to now go back to that, and that's what I'm saying, that's not the one that I'm saying is overwhelming, but I'm saying it's satisfied. And I want to explain the various points. You're saying that there's overwhelming evidence that he knew he was a felon. I don't dispute that. I think that's true. Fine. Okay. Like I said, I just want to go back through the various stages that show that we meet the grandest standard, which is that there's not more than a reasonable possibility. And I agree that that is not the overwhelming part of this case. That's an arguable thing. That's why we're here. But to show that there was more than a reasonable possibility that the jury didn't rely exclusively on aiding, the value of the fact that they found him guilty, it had to be one, the other, or both. So counsel's argument depends on it being exclusively aiding. And we concede, Your Honor, that the aiding count, if the aiding theory, could not stand on its own, for Rahif reasons. We can see that. My only reliance to point out the fact that there had, for Mr. Seabrooks to establish prejudice, we have to assume that they also found, in fact, exclusively found aiding. In order to do that, they would have had to have rejected his argument that he had no intention to be around those guns, he didn't want those guns. I mean, he could have said that to the police for self-serving reasons, which we think established his knowing that he's a felon. But just for the factual point of his intent, that he was a willing participant in the scheme. Now as to his possession, I want to go back to some other points in the record that I think show... Were his fingerprints found on the gun? I don't believe so, Your Honor. I don't know. But he said he thought they would be. That's  He said he didn't touch the guns. He said, he said, my fingerprints will be on the little one. So he acknowledges... Well, you would agree, though, that there is contradictory evidence in the record, that he says that what he actually said was that he didn't, that he touched the bag and he opened it up and that he said that his fingerprints would be on the bag. I believe I thought it was a gun. Perhaps I'm mistaken, Your Honor. And if so, I apologize. But my recollection was a gun. But I want to go back to this court in his direct appeal.  I'm sorry. That's what the officer said. I don't dispute that. That's what the officer said. I'm just saying that there's other evidence that he said that the officer got it wrong. And what he actually said was, I touched the bag. Again, Your Honor, my recollection was he said that my fingerprints would be on the gun. But again, this court said, I'm going to quote from the from the original opinion in this direct appeal, that Seabrooks received the stolen firearms from Butler and placed them in the Cadillac. That satisfies the actual possession instruction from the court. So as this court has done in other cases, again, this is not the standard. The standard is not what a reasonable jury would do. I'm not saying that. But what I am saying is that this court, in the opinions applying the Granda test of whether there's more than a reasonable possibility, has looked at the evidence and looked at, in its opinions, well, would a reasonable jury have found this, that, or both? And here, since the jury specifically must have, must have rejected the intent argument, I didn't want to be around the guns, but found him to be a willing participant in the scheme, plus this court's statements that he received and placed the guns, plus Mr. Seabrooks' own acknowledgement that my fingerprints might be on the little one, and yes, I took the guns from Mr. Butler, and yes, I put them around the car. Would a reasonable jury have only relied on aiding and abetting and not his primary possession? And the fact that the jury asked the question, I want to address this because this is very important, the fact that the jury asked a question about his actual possession shows that's what they were thinking of. There'd be no reason for that question if they were just satisfied, oh, he aided and abetted. Well, not necessarily, right? I mean, it shows that they asked the question because maybe they considered that first because the prosecutor specifically said to them, let's see exactly what it is, but the prosecutor said, but if you for whatever reason have a question about that, meaning principal liability, you can move on to aiding and abetting, and you can determine, did Nigel Butler help? Did Isaac Seabrooks help Nigel Butler commit this crime? And the answer is yes. And so if the jury was following what the prosecutor told the jury to do, the jury naturally would have arrived first at the principal liability argument. It then asks the question, is touching and receipt, mere touching and mere receipt enough? The court says, no, it's not. And then later we come back and there is a guilty verdict. So if the jury is following what the prosecutor said to do, it makes perfect sense that you could have that question asked and still have a guilty verdict on exclusively the aiding and abetting theory. Why doesn't that make sense? Because we also assume that the jury followed the court's instructions and his own admission that he placed the gun. He has the guns and decides where to put them. He's placing them here. I'm placing them here. As this court noted in its direct appeal opinion, if the jury, in response to its question, the judge repeated the various forms of possession, including actual possession, which is direct physical control. That's what his own statements established. So if the jury believes Mr. Seabrooks' own statement that he received the guns, took them, and then placed them in various places, that satisfies the actual possession instruction that they just received from the judge in response to their question, that he had direct physical control. Isn't it really a jury question though as to whether whether that consists of direct physical control or instead of mere receipt? I mean, isn't that really what the question is all about here? I mean, really, doesn't that, isn't that what this whole case boils down to? Absolutely, Your Honor. And that being the case, and that being a jury question, how can we not have grave doubts about whether the jury resolved this case exclusively on the aiding and abetting theory? Because as this court has applied in Adley and Grandin, all the various cases applying this standard of, is there more than a reasonable possibility, and in this case, the possibility that they've relied exclusively on aiding and abetting, is would a reasonable jury, the manner the court has looked at it, is looking at the evidence, looking at his statements, looking at the government relied in its arguments. I think if you look at them, I disagree with counsel's representation. They said, they repeatedly said that he actually possessed the guns. And you look at, would a reasonable juror apply these facts to this leak to the court's instructions that direct physical control amounts to actual possession? So is it possible that they've relied exclusively on aiding? It's possible, but is there more than reasonable possibility that they relied exclusively on it when the facts established the legal definition of actual possession? We believe that the record does not support that finding, that it's crucial to show actual prejudice under Grandin, and that is why there is harmless error in this case. Thank you. All right. Thank you, Mr. Colvin. We'll hear from Ms. Bren. Judge Rosenbaum, you mentioned that the standard is a grave doubt standard ultimately. And the grave doubt standard was elaborated upon in O'Neill versus McAnich. And that's where the court says, when we're dealing with the Brecht-Grandin standard, even if the evidence is in equipoise as to harmlessness, like 50-50, whether it was harmless or harmful, the defense wins because it is the government burden to prove harmlessness. And that is clear. I've cited the Liebman and Hertz habeas treatise, which is really clarifying on the question of harmless error. They even try to be more precise as to what the standard requires, more than a reasonable possibility. And what does that mean? They say that the government needs to prove that it was highly likely that the error was harmless. And they just can't prove that here after the court gave the supplemental instruction that confirmed the defense theory of the case, that everything that they are saying is actual possession. The court said it's not. So once you have that instruction from the court confirming the defense argument, everything the defense argued, there was, I would say, no possibility, but that's not my burden to prove no possibility. But if you read the record based on aiding and abetting, and with regard to this idea that the government is floating now, that these were sort of like coextensive theories, they absolutely were not. They relied on different evidence. This is very unlike Granda and the dual predicate situation where all the evidence is inextricably intertwined. The government's actual possession theory relied on receipt of the guns and sitting on a gun. Well, sitting on the gun was disproven at trial by a photo that was staged. Receipt of the gun, Mr. Seabrook certainly admitted momentarily receiving it and momentarily inspecting the pouch. But after the court instructed the jury on the law that receipt and mere inspection are not possession, and we have a jury verdict within 30 minutes of that, I think the only reasonable reading of this record is that the jury understood exactly what the government told them. You have two theories. If for some reason you can't convict on actual possession and you think maybe he, Mr. Seabrook, was just curious when he looked in the pouch, then go to aiding and abetting. The government gave them the roadmap what to do if the actual possession theory was not sufficient. Where were his fingerprints found? They were not found on anything. The government took fingerprints. I'm not sure whether they submitted them ultimately for analysis or not, but they certainly did not have any fingerprint evidence tying him to the gun. On the gun, but what about the bag? No, it wasn't even submitted for analysis, I believe. I believe that's what the testimony showed. So the government's whole case for possession was really receipt, and receipt is not control. Even before the court supplemental instruction, if you just look at the standard instruction, direct control, receiving something and pushing it away from yourself is not controlling it. So even without the supplemental instruction, the government's case was weak. But the sufficiency of the government's case on the actual possession theory, again, is not the relevant determinant of harmless error. The court has to look at the jury's deliberative process, and the government guided them in that process by telling them that if there isn't sufficient evidence of actual possession, go to aiding and abetting, and then you have the court instructing them pursuant to the Edwards case that receipt and inspection of the firearm are not sufficient to prove possession. So I think if you look at the entire record, which Brecht and Granda and O'Neill tell us to do, and the case, you will see that the aiding and abetting instruction was the likely basis for the conviction in this case, and for that reason, the error was not harmless, and the conviction on count one should be reversed for a new trial. Thank you. Thank you, Ms. Brannon. Mr. Kola?